**AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, et al., Plaintiffs,**

v.

**UNITED STATES of America, Defendant,**

United States Senate, Speaker and Bipartisan Leadership of the United States House of Representatives, Comptroller General of the United States, Intervenors.

Civ. A. No. 86–0154.

United States District Court, District of Columbia.

May 6, 1986.

Sandra Sue Adams-Choate, Charles A. Hobbie and Mark D. Roth for plaintiffs.

Richard K. Willard, Asst. Atty. Gen., Joseph E. diGenova, U.S. Atty., and David J. Anderson, Neil H. Koslowe, Richard Greenberg and Lori Fields, Attys., U.S. Dept. of Justice, for defendant.

Michael Davidson, Counsel, U.S. Senate, Ken U. Benjamin, Jr., Deputy Counsel, U.S. Senate, and Morgan J. Frankel and John C. Grabow, Asst. Counsel, U.S. Senate, for intervenor U.S. Senate.

Steven R. Ross, Gen. Counsel to the Clerk of the U.S. House of Representatives, Charles Tiefer, Deputy Gen. Counsel to the Clerk of the U.S. House of Representatives, and Michael L. Murray, Asst. Counsel to the Clerk of the U.S. House of Representatives, for intervenor Speaker and Bipartisan Leadership Group of the U.S. House of Representatives.

Harry R. Van Cleve, Gen. Counsel, U.S. Gen. Accounting Office, James F. Hinchman, Deputy Gen. Counsel, U.S. Accounting Office, Robert P. Murphy, Atty.-Advisor, U.S. Gen. Accounting Office, Lloyd N. Cutler, John H. Pickering, William T. Lake, Richard K. Lahne and Neal T. Kilminster for intervenor Comptroller Gen. of U.S.

Before SCALIA, Circuit Judge of the United States Court of Appeals for the District of Columbia Circuit, JOHNSON, District Judge of the United States District Court for the District of Columbia, and GASCH, Senior District Judge of the United States District Court for the District of Columbia.

PER CURIAM:

Plaintiffs, the American Federation of Government Employees ("AFGE") and two individuals who receive federal annuities under the Civil Service retirement laws, challenge the constitutionality of certain features of the Balanced Budget and Emergency Deficit Control Act of 1985, Pub.L. No. 99–177, 99 Stat. 1037, popularly known as the Gramm-Rudman-Hollings Act. The challenge is brought pursuant to paragraph 274(a)(2) of the Act, which authorizes "adversely affected" parties to bring actions for declaratory judgment and injunctive relief concerning the Act's constitutionality in this court. The principal issue in the case is whether plaintiffs have standing to bring their suit.

I

Plaintiffs first challenge the Act's "automatic deficit reduction process," which is intended to reduce the federal budget deficit to zero by fiscal year 1991. That process requires that each year the Directors of the Congressional Budget Office ("CBO") and the Office of Management and Budget ("OMB") estimate the amount of the deficit for the upcoming fiscal year. Act § 251(a)(1). If the estimate exceeds (by a specified amount) the deficit target level for that year, the Directors must calculate, pursuant to detailed provisions of the Act, reductions in the budgets of various federal programs sufficient to eliminate the excess. *Id.* § 251(a)(3). The Directors jointly report their deficit estimates and budget reduction calculations to the Comptroller General, who reviews their report and issues a similar one, containing his own deficit estimates and budget reduction calculations, to the President and Congress. *Id.* § 251(a)(2), (b). The President

then issues a "sequestration" order mandating that the budget reductions specified by the Comptroller General be implemented. *Id.* § 252(a)(1), (a)(3). In fiscal years 1987 through 1991, the Directors of the CBO and the OMB and the Comptroller General are required to submit revised reports later in the year, *id.* § 251(c), upon which the President bases a final sequestration order, *id.* § 252(b)(1).

▮ On February 1, 1986, the President issued the sequestration order for fiscal year 1986, to take effect March 1, 1986. *Order, Emergency Deficit Control Measures for Fiscal Year 1986* (Feb. 1, 1986). Among other things, that order permanently cancelled cost-of-living adjustments ("COLAs") that those receiving federal retirement annuities would have received in 1986. *Id.* at 1, 4. The individual plaintiffs, and AFGE on behalf of certain of its members, have standing to challenge the constitutionality of the automatic deficit reduction process as a result of this injury. *See Synar v. United States,* 626 F.Supp. 1374, 1380–81 (D.D.C.) (three-judge court) (per curiam) (similarly situated plaintiffs had standing to challenge the constitutionality of the automatic deficit reduction process), *prob. juris. noted sub nom. Bowsher v. Synar,* — U.S. —, 106 S.Ct. 1181, 89 L.Ed.2d 298 (1986). The plaintiffs in this case challenge the automatic deficit reduction process on many of the grounds advanced by the plaintiffs in *Synar,* including that which there prevailed, *viz.,* that the process unconstitutionally grants executive power to the Comptroller General, who is removable by joint resolution of Congress. Because no good cause has been shown why plaintiffs should not obtain the declaratory relief they have requested in connection with this claim, which relief is identical to that granted by this court to the plaintiffs in *Synar,* we grant plaintiffs' motion for summary judgment on this claim.

## II

Plaintiffs' second challenge is to the Act's "fallback deficit reduction process," an alternative mechanism intended to reduce the federal budget deficit in the event that the reporting provisions of the automatic deficit reduction process were "invalidated." *See* Act § 274(f)(1). Although this court's holding in *Synar* was such an invalidation, the fallback deficit reduction process has not yet been implemented, because the judgment in *Synar* was stayed pending further judicial review, as required by subsection 274(e) of the Act. Under the fallback process, the budget deficit estimates and budget reduction calculations made by the Directors of the CBO and the OMB are reported not to the Comptroller General but rather to a special joint committee of Congress. Act § 274(f)(1). That joint committee, which is composed of the entire membership of the Budget Committees of the Senate and the House of Representatives, must within five days report to both Houses a joint resolution setting forth the contents of the Directors' report. *Id.* § 274(f)(2)–(3). Consideration of the joint resolution in both Houses is to be governed by special parliamentary rules set forth in paragraph 254(a)(4) of the Act. *Id.* § 274(f)(4). Among these parliamentary rules, the most significant are the prohibition of motions to amend the joint resolution, *id.* § 254(a)(4)(D), and the requirement that each House take a final vote on the reported joint resolution within five days on which that House is in session after the joint resolution is reported out of the joint committee, *id.* § 254(a)(4)(A). If the joint resolution is passed by both Houses and signed by the President (or a presidential veto is overridden), it is then deemed to be the report of the Comptroller General upon which the President is required to base any sequestration order. *Id.* §§ 274(f)(5), 252(a)–(b).

Plaintiffs attack this process on three major grounds. First, stressing the uncertain nature of the economic predictions made by the Directors of the CBO and the OMB in formulating their report, and the consequently uncertain effect of the Act upon the COLA increases in which plaintiffs are interested, plaintiffs argue that the fallback deficit reduction process is so

vague as to violate the due process clause of the fifth amendment. Second, plaintiffs argue that, by statutorily determining the procedures governing congressional consideration of the joint resolution, the Act unconstitutionally interferes with the power of each House to change its internal rules unilaterally. Third, plaintiffs argue that, because the report upon which the joint resolution (and therefore any presidential sequestration order) must be based is drawn up in part by the Director of the CBO, a legislative officer, the fallback deficit reduction process unconstitutionally vests executive powers in a legislative officer in violation of the doctrine of separation of powers. At times, plaintiffs also appear to be making a fourth argument (seemingly inconsistent with their third), *viz.*, that because the report upon which the joint resolution must be based is drawn up in part by the Director of the OMB, an executive officer, the fallback deficit reduction process delegates legislative authority to an official of the executive branch in violation of the doctrine of separation of powers.

In response, the United States argues that the plaintiffs' challenges to the fallback deficit reduction process are unripe because that process has not yet been and may never be invoked, and that the Act is not unconstitutionally vague. The Speaker and Bipartisan Leadership Group of the House of Representatives argue that the challenge to the parliamentary rules governing congressional consideration of the joint resolution presents a nonjusticiable political question. Finally, the Senate argues that there is no constitutional defect in those rules, because subsection 271(c) of the Act expressly provides that each House may alter them in the same way it might alter any other internal rule.

### III

Before reaching these issues, however, we must satisfy ourselves that the plaintiffs possess Article III standing to raise their challenges. "Those who do not possess Art. III standing may not litigate as suitors in the courts of the United States." *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 475–76, 102 S.Ct. 752, 760, 70 L.Ed.2d 700 (1982) (footnote omitted). It is by now well established that

> at an irreducible minimum, Art. III requires the party who invokes the court's authority to "show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant," *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 99 [99 S.Ct. 1601, 1608, 60 L.Ed.2d 66] (1979), and that the injury "fairly can be traced to the challenged action" and is "likely to be redressed by a favorable decision," *Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 38, 41 [96 S.Ct. 1917, 1924, 1925, 48 L.Ed.2d 450] (1976).

*Id.*, 454 U.S. at 472, 102 S.Ct. at 758 (footnote omitted). Although there are additional "prudential" principles that bear on the question of standing, *see id.* at 474–75, 102 S.Ct. at 759–60, we have previously held that these are inapplicable to challenges brought under section 274 of the Gramm-Rudman-Hollings Act, which expands standing to the full extent permitted by Article III. *See Synar*, 626 F.Supp. at 1380 n. 3. We therefore test plaintiffs' allegations of injury against the "core" requirements of Article III.

Although those allegations are regrettably imprecise, *see* Amended Complaint ¶¶ 16–18, they can be read generously to identify four separate injuries that the individual plaintiffs and those of AFGE's members who receive federal retirement annuities are suffering or will suffer as a result of the Act. The first alleged injury is that payment of 1986 COLA increases has been temporarily suspended by the Act. Amended Complaint ¶¶ 16 & 17. The difficulty with this allegation is that the Act's temporary suspension of payment of 1986 COLA increases ended on March 1, 1986, when the presidential sequestration order permanently cancelling those COLA increases went into effect. Thus, the plaintiffs are currently suffering no injury from the Act's temporary suspension provisions.

■ The second alleged injury is that the presidential sequestration order which has already been issued pursuant to the automatic deficit reduction process permanently cancelled the 1986 COLA increases that otherwise would have been paid. Amended Complaint ¶ 17. This injury is clearly sufficient to constitute injury-in-fact for Article III purposes, and would be redressed by a declaration that the presidential sequestration order was without legal force and effect. *See Synar,* 626 F.Supp. 1380–81. It is for this reason that we have granted plaintiffs' motion for summary judgment on their claim that the automatic deficit reduction process is unconstitutional. *See supra* at 338. But this injury cannot give plaintiffs standing to attack the fallback deficit reduction process. This court has already held that the automatic deficit reduction process can be severed from the fallback deficit reduction process and the rest of the Act. *Synar,* 626 F.2d at 1381 n. 6. We think it at least equally apparent that the fallback deficit reduction process can be severed from the automatic deficit reduction process and the rest of the Act. A declaration that the fallback deficit reduction process was unconstitutional therefore would in no way remedy the injury that the sequestration order issued pursuant to the automatic deficit reduction process has inflicted upon plaintiffs.

The same reasoning demonstrates the inadequacy of the third injury alleged by plaintiffs, to wit, that the automatic deficit reduction process might result in sequestration orders reducing or cancelling COLA increases in future fiscal years. Amended Complaint ¶ 16. A declaration that the fallback deficit reduction process was unconstitutional would have no effect on the future functioning of the automatic deficit reduction process.

■ The last injury identified by plaintiffs is that, if the automatic deficit reduction process is invalidated by the Supreme Court, the fallback deficit reduction process will be implemented in fiscal year 1986 and thereafter, and presidential sequestration orders issued pursuant to that process might permanently reduce or cancel COLA increases that would otherwise be payable in those fiscal years. Amended Complaint ¶ 16. But the issuance of a presidential sequestration order under the fallback deficit reduction process would require the passage of legislation, and we know of no case in which a plaintiff has successfully argued that he had standing because he was likely to be injured by legislation that had not yet been passed. *Cf. Physicians' Education Network, Inc. v. HEW,* 653 F.2d 621, 624 (D.C.Cir.1981) (per curiam) (court declined to "speculate on what Congress will do in the future"). Such allegations of injury are simply "conjectural" and "hypothetical," *City of Los Angeles v. Lyons,* 461 U.S. 95, 102, 103 S.Ct. 1660, 1665, 75 L.Ed.2d 675 (1983), and therefore insufficient to meet Article III's requirement that future injury be "real and immediate," *id.,* and " 'certainly impending,' " *Babbitt v. United Farm Workers National Union,* 442 U.S. 289, 298, 99 S.Ct. 2301, 2308, 60 L.Ed.2d 895 (1979) (quoting *Pennsylvania v. West Virginia,* 262 U.S. 553, 593, 43 S.Ct. 658, 663, 67 L.Ed. 1117 (1923)).

### IV

Because plaintiffs have failed to establish that the fallback deficit reduction process has caused, is causing or will cause them any injury that could be remedied by a declaration that that process was unconstitutional, we dismiss plaintiffs' challenge to that process for lack of standing. We do, however, grant plaintiffs' motion for summary judgment on their request for a declaration that the automatic deficit reduction process is unconstitutional, for the reasons given in this court's opinion in *Synar,* 626 F.Supp. at 1391–1404. These dispositions are reflected in the attached Order.

### ORDER

Upon consideration of the pending dispositive motions filed by the parties, the memoranda of points and authorities in support thereof and in opposition thereto, and the entire record herein, and for the reasons stated in the accompanying opinion, it is by the court this 6th of May, 1986,

ORDERED that, because no good cause has been shown why summary judgment

ought not be granted to plaintiffs insofar as they challenge the "automatic deficit reduction process" established by the Balanced Budget and Emergency Deficit Reduction Control Act of 1985 and request declaratory relief identical to that granted by this court to the plaintiffs in *Synar v. United States*, 626 F.Supp. 1374, 1380–81 (D.D.C.) (three-judge court) (per curiam), *prob. juris. noted sub nom. Bowsher v. Synar*, —— U.S. ——, 106 S.Ct. 1181, 89 L.Ed.2d 298 (1986), plaintiffs' request for such declaratory relief be and hereby is granted; and it is further

ORDERED that, because plaintiffs lack standing to challenge the "fallback deficit reduction process" established by the Balanced Budget and Emergency Deficit Reduction Control Act of 1985, defendant's motion to dismiss that challenge for lack of subject matter jurisdiction be and hereby is granted.